**FILED**
**CLERK**

2:18 pm, Sep 25, 2019

**U.S. DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
**LONG ISLAND OFFICE**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------X
MARGALIE RODRIGUEZ,

      Plaintiff,

      -v-

NASSAU COUNTY and NASSAU COUNTY
COMMISSION ON HUMAN RIGHTS,

      Defendants.
-------------------------------------------------------X
FEUERSTEIN, S., Senior District Judge:

Case No. 16-cv-2648 (SFJ)(ARL)
**Memorandum and Order**

I.    <u>Introduction</u>

      Plaintiff Margalie Rodriguez ("Plaintiff' or "Rodriguez") commenced this employment

discrimination action pursuant to 42 U.S.C. § 2000e *et seq.* (hereafter, "Title VII"), 42 U.S.C. §

1981, and New York State Human Rights Law ("NYSHRL") against Defendants Nassau County

("County") and Nassau County Commission on Human Rights ("Commission"; together with the

County, the "Defendants"), alleging gender, race, and national origin discrimination, as well as

retaliation.  (*See generally* Complaint ("Complaint")(ECF No. 1).)  Presently before the Court is

the Defendants' motion seeking summary judgment in their favor on all of Plaintiff's claims

(hereafter, the "Summary Judgment Motion") (*see* ECF No. 31; *see also* Mem. in Supp.

("Support Memo") (ECF No. 31-6)), which the Plaintiff opposes (hereafter, "Opposition" or

"Opp'n")(ECF No. 32).  For the reasons that follow, the Defendants' Summary Judgment

Motion is GRANTED.

II.  Background

 *A.  Factual Background*[1]

  1. The Commission

The County's Commission was created to "encourage mutual understanding and respect among all groups in the County, eliminate prejudice, intolerance, bigotry and discrimination and give effect to the guarantee of equal rights for all assured by the constitution and the laws of [New York States] and of the United States of America."  (Rule 56.1 Stmt., ¶5 (quoting By-Laws of Commission, *attached as* Ex. C).)  The Committee is overseen by a Board, which is comprised of fifteen appointed Commissioners, with one of the Commissioners being appointed as the Board's Chairperson.  (*See id.* at ¶6).  The day-to-day operations of the Commission are conducted by an executive director, who is chosen by a selection process: the Board proposes a nominee to the County Executive; the County Executive puts forth the nomination to the County Legislature; and, ultimately, the County Legislature appoints the executive director.  (*See id.* at ¶¶9, 10.)

The Commission has three divisions:  Investigation and Compliance, which is responsible for investigating discrimination complaints; Pretrial, which provides various levels of assistance

---

[1] Unless otherwise indicated, the facts are taken from the County Defendants' Rule 56. 1 Statement in support of their Summary Judgment Motion (hereafter, "Rule 56.1 Stmt.")(*see* ECF No. 31-1), and Plaintiff's Rule 56.1 Response (hereafter, "Rule 56.1 Response")(*see* ECF No. 32-1).  Unless otherwise stated, a standalone citation to a Rule 56.1 Statement or Response denotes that either the parties agree, or the Court has determined, that the underlying factual allegation(s) is(are) undisputed.  Citation to a party's Rule 56.1 Statement or Response incorporates by reference the document(s) cited therein.

The County Defendants' exhibits are identified by letters and are attached to the Declarations of Attorney Deanna D. Panico (*see* ECF No. 32-1; ECF No. 33-1).  The Plaintiff's exhibits are identified by numbers and are attached to the Declaration of Attorney Christopher C. Luke, Jr. (*see* ECF No. 32-2).  While both Plaintiff and Defendants submitted several identical exhibits, *e.g.*, Plaintiff's deposition transcript, such exhibits are identified by the respective letters or numbers assigned to them by the citing party.

to inmates, including assisting inmates who believe their rights have been violated; and Job Development, which assists minority individuals in finding employment. (*See id.* at ¶¶12, 13, 15, 17.)

### 2. The Hiring of Plaintiff and Others

In 1994, Plaintiff, an African American woman, was hired by the County as a "Human Relations Representative I" and was assigned to the Commission. (*See id.* at ¶¶2, 46.) Non-parties Rodney McRae ("McRae") and Dan Russell ("Russell"), both African American men (*see id.* at ¶¶20 (Russell), 45 (McRae)), were also hired by the County and assigned to the Commission at the same time as Plaintiff. (*See id.* at ¶4.) "Plaintiff was assigned to the Investigation and Compliance Division," (*id.*, ¶14), with McRae being assigned to the Pretrial Division (*see id.* at ¶16), and Russell being assigned to the Job Development Division (*see id.* at ¶18).

### 3. The Executive Director Position from 2008 Onward

In 2008, Russell became the Commission's Executive Director. (*See id.* at ¶19.) At that time, in addition to overseeing the Pretrial Division, McRae began supervising the Job Development Division. (*See id.* at ¶22.) Plaintiff continued as supervisor of the Investigation and Compliance Division. (*See id.*) Russell retired at the end of December 2014, leaving the Commission's Executive Director position vacant. (*See id.* at ¶23.)

Thereafter, both Plaintiff and McRae applied for the Executive Director position. (*See id.* at ¶¶24, 31.) It is undisputed that at that time, Plaintiff was a Human Relations Representative II, supervising the Investigation and Compliance Division. In December 2014, Zahid Syed ("Syed") was the Chairperson of the Commission's Board; he interviewed Plaintiff and McRae and another person for the Executive Director position. (*See id.* at ¶¶26-28, 30, 32; *see also* Syed

Depo. Tr. (Ex. D) at 15.) Those interviews focused largely upon the candidates' community involvement since "[c]ommunity involvement is incredibly important to the Commission because the programs run by the Commission are not funded by the County[, but are] . . . funded by '[d]onations from communities, nonprofit organizations, banks, or profit organizations.'" (*Id.*, ¶ 33 (quoting Syed Depo Tr. (Ex. D) at 46:22-24); *see also id.* at ¶34 (Syed testifying that, based upon his twenty years as a community activist, he believed that if a person was involved in the community, he or she would have many contacts and be able to raise funds).) Syed testified that his interviews lasted no more than fifteen minutes. (*See* Rule 56.1 Response, ¶28 (citing Syed Depo Tr. (Ex. 6) at 16:2-3).) McRae testified that he discussed his community involvement during his interview with Syed. (*See* Rule 56.1 Stmt., ¶35 (citing McRae Depo. Tr. (Ex. F), 71-72).) Syed testified that when he asked Plaintiff about her community involvement, she responded that she was involved with her church (*see id.* at ¶36), but Plaintiff claims she discussed more than just her church involvement. (*See* Rule 56.1 Response, ¶36 (citing Plaintiff's Depo. Tr. (Ex. 2), 48:17-52:10).) Plaintiff further testified that during her interview with Syed, "he told me that, 'I want a man for the position, and I'm going to be bringing in some other people for employees of Pakistani and Indian descent'" (hereafter, the "Syed Statements"). (Plaintiff's Depo. Tr. (Ex. 3), 312:2-6; *cf., id.* at 49-50.)

Thereafter, Syed presented the Board with the names of Plaintiff, McRae, and the third individual interested in the Executive Director position, and suggested McRae as the most qualified for that position, based largely on McRae's community involvement, and for whom he received may recommendations from other Commissioners and community leaders. (*See* Syed Depo Tr. (Ex. D) at 20; Rule 56.1 Stmt., ¶¶37-40.) However, Plaintiff disputes that the Board was aware of her candidacy. (*See* Rule 56.1 Response, ¶¶ 38, 41; *but, cf.*, Syed. Depo. Tr. (Ex.

D) at 61-62.) "On February 23, 2015, the Board of Commissioners voted unanimously to nominate Mr. McRae as Executive Director of the Commission" (hereafter, the "February 2015 Nomination"). (*Id.*, ¶42.) McRae served as the Acting Executive Director from the February 2015 Nomination date until December 18, 2017, when he was formally appointed to that position by the County Legislature. (*See id.* at ¶43.)

### 4. Plaintiff's Conduct Following McRae's Nomination

A month after the February 2015 nomination, Plaintiff sent McRae an email "informing him that she would no longer perform the majority of duties that she performed under the prior Executive Director." (*Id.* at ¶48; *see also id.* at ¶¶49-50.) Rather, she limited her job functions to a Human Relations Representative II. (*See* McRae Depo Tr. (Ex. F), 25: 23-25 (testifying Plaintiff does "the job she is tasked to do").) Further, since the February 2015 Nomination, the only method of communication between McRae and Plaintiff has been email (*see id.* at 23:23-24:2) as, since the Nomination, "[P]laintiff refuses to speak to" McRae. (*Id.*, ¶51.) As of the February 2015 Nomination, there have been several complaints made against Plaintiff: minor verbal complaints (*see* McRae Depo. Tr. (Ex. F) at 26); two written complaints by co-workers (*see* Rule 56.1 Stmt., ¶55 (citing Ex. M), ¶56 (citing Ex. N)); and, a Workplace Violence Incident Report.[2] (*See id.* at ¶ 54 (citing Ex. L).)

### 5. The Anti-Bias Task Force

In or about 2010, Plaintiff, Russel, Syed, and others "created an anti-bias task force that was designed to help address bias crimes in Nassau County" (hereafter, the "Task Force"). (*Id.*, ¶65.) Syed may have been one of the individuals who appointed Plaintiff to the Task Force.

---

[2] A previous Workplace Violence Incident Report was filed against Plaintiff in 2009, when Russell was the Executive Director. (*See* Rule 56.1 Stmt., ¶ 53 (citing Ex. K).)

(*See id.* at ¶67; cf., Rule 56.1 Response, ¶67.) Plaintiff claims she saw a document in December 2014 "wherein she was no longer listed as an officer within the [T]ask [F]orce" but, she never followed up with McRae or Syed to verify her removal. (*Id.*, ¶68.) She does not know whether the Task Force still exists. (*See id.* at ¶69.)

6. Plaintiff's Verified Complaint to N.Y.S. Division of Human Rights

The County has an Equal Employment Opportunity Department (hereafter, the "EEOD") (*see id.* at ¶72), with which Plaintiff is familiar (*see id.* at ¶73), since she is the EEOD Representative for the Commission (*see id.* at ¶74). However, Plaintiff never filed a complaint of discrimination with the EEOD regarding the allegations raised in this action (*see id.* at ¶75), although Plaintiff claims she "sent a letter notifying the County Attorney of her claims on March 4, 2015." (Rule 56.1 Response, ¶75 (citing Ex. 11 (undated letter to County Executive Mangano without any indication that copy of same was sent to County Attorney)).

On May 12, 2015, Plaintiff filed a verified complaint with the N.Y.S. Division of Human Rights raising her claims of unlawful employment discrimination practices based upon sex, race, color, national origin and unlawful retaliation (hereafter, the "State Complaint"). (*See id.* (citing Ex. 15).) There is no proof that the State Complaint was served upon the County Attorney. (*See* Ex. 15.)

7. Trainings

Although Plaintiff alleged that she has been denied housing training (*see id.* at ¶70), she conceded that she was granted permission to attend one housing training. (*See* Plaintiff's Depo. (Ex. E), 135:17-20); Ex. P.) Plaintiff claims that after she filed her Verified Complaint and upon McRae's request, she was not invited to another housing training she had previously attended

annually for several years. (*See* Rule 56.1 Response, ¶70 (citing Plaintiff's Depo. Tr. (Ex. 3) at 136.)

### 8. Plaintiff's Additional Claims

Plaintiff has made several additional statements which she alleges are disputed facts, *to wit*: Syed subjected her to intentional discrimination during her interview with him for the Executive Director position (*see id.* at P76 (citing Plaintiff's Depo. Tr. (Ex. 3) at 312:2-9 (*i.e.*, the Syed Statements))); she overheard McRae make derogatory comments about her national original and race (*see id.* at ¶78 (citing Plaintiff's Depo. Tr. (Ex. 2) at 129:12-25)); "McRae requested his subordinates make false complaints against Plaintiff" (*id.* at ¶79 (citing Plaintiff's Affidavit (Ex. 8), ¶¶23-26)); "[a]s an act of retaliation[,] Plaintiff was stripped of her supervisory duties" (*id.* at ¶80 (citing Plaintiff's Depo. Tr. (Ex. 2) at 113: 42-114:7)); and, McRae was not qualified for the position of Executive Director since he had never been a supervisor. (*See id.* at ¶81 (citing McRae's Depo. Tr. (Ex. 4), 9:7-9; McRae's Depo. Tr. (Ex. 5), 69:18-20; Ex 14 (McRae's undated resume)).)

### B.  *Procedural Background*

On May 24, 2016, Plaintiff commenced this action, raising six causes of action, claiming:

> 1. pursuant to Title VII, discrimination by Defendants because of Plaintiff's gender, national origin, and race (*see* First Cause of Action, Complaint, ¶¶114-146);

> 2.  pursuant to Title VII, retaliation by Defendants in response to Plaintiff opposing to Defendants' alleged unlawful employment practices (*see* Second Cause of Action, Complaint, ¶¶147-149);

> 3.  pursuant to N.Y.S. Executive Law § 296, discrimination by Defendants based upon Plaintiff's gender, national origin, and race (*see* Third Cause of Action, Complaint, ¶¶150-153);

4. pursuant to N.Y.S. Executive Law § 296(7), retaliation by Defendants in response to Plaintiff opposing Defendants' alleged unlawful discriminatory practices;

5. pursuant to N.Y.S. Executive Law § 296(6), aiding and abetting in the discriminatory conduct by Defendants in violation of NYSHRL (*see* Fifth Cause of Action, Complaint, ¶¶157-159); and

6. pursuant to 42 U.S.C. § 1981, a claim of a deprivation of Plaintiff's employment benefits and privileges by Defendants because of Plaintiff's race (*see* Sixth Cause of Action, Complaint, ¶¶160-167).

On June 30, 2016, the Defendants answered Plaintiff's Complaint, denying her allegations and six causes of action, and raising several affirmative defenses including: Plaintiff's failure to file a Notice of Claim in conformance with state law (*see* Eighth Affirmative Defense, Answer (ECF No. 9), ¶176); entitlement to immunities (*see* Tenth Affirmative Defense, Answer, ¶178); and, the *Ellerth/Faragher* affirmative defense (*see* Answer, Twelfth Affirmative Defense, ¶180). After multiple discovery extensions, on July 2, 2018, the Defendants moved for summary judgment in their favor on all of Plaintiff's causes of action.

*C. The Parties' Positions*

1. The Defendants' Position

The Defendants argue that Plaintiff's Title VII claims of discrimination and retaliation fail as a matter of law because she cannot make out a *prima facie* case of illegal discrimination. Defendants assert that as to "the only adverse employment action alleged by [her] with respect to her discrimination claim[, *i.e.*,] the alleged failure to promote Plaintiff to the position of Executive Director," Plaintiff has no evidence that the failure to elevate her to that position was because of any discriminatory intent. (Support Memo at 3.) As to Plaintiff's race-based claim, Defendants contend that since McRae is also African-American, no "jury could possibly conclude that Plaintiff was discriminated against because of her race." (*Id.*) Regarding her

gender-based claims, the Defendants state Syed had only one vote on the Board of Commissioners, which voted on the nomination of Executive Director candidate, and that the County Legislature voted to approve that nomination, and Plaintiff has not put forth any evidence of discriminatory intent by that electoral body in its voting to approve McRae's appointment.  (*See id.* at 5.)  Additionally, Defendants assert that even assuming Plaintiff could make out a *prima facia* case of Title VII discrimination, this action "still warrants dismissal because the Defendants' actions were motivated by legitimate, non-discriminatory reasons, which the Plaintiff cannot demonstrate are pretextual."  (*Id.* at 9.)  Specifically, because Commission-run programs are funded by outside sources, the ability to fundraise is crucial to the Executive Director position; and, since McRae had significant community involvement and connections, Syed believed McRae was substantially more capable of raising funds than Plaintiff.  (*See id.*)

As to Plaintiff's retaliation claim, the Defendants argue that, even accepting for purposes of this Motion that "Plaintiff engaged in a protected activity when she filed [the Verified Complaint] . . . on May 8, 2015," that claim fails since she "cannot establish that any adverse employment actions were taken against [her] as a result" of that filing.  (*Id.* at 5-6.)  Defendants further argue that, assuming Plaintiff's claims of being removed from the Task Force and being denied training are true, they are not adverse employment actions under Title VII.  (*See id.* at 6 (arguing the failure to train was not an adverse action), and at 7 (arguing Plaintiff has no evidence of removal from the Task Force).)  In any event, since Plaintiff filed the Verified Complaint *after* the alleged denial of training and the alleged Task Force removal, neither can serve as a basis for Plaintiff's retaliation claim.  (*See id.* at 8.)

Defendants contend: that Plaintiff's state law claims should be dismissed because Plaintiff failed to serve the requisite Notice of Claim or otherwise comply with the pleading and temporal requirements of New York General Municipal Law § 50-i (*see id.* at 10-11 (citing *Hardy v. N.Y.C. Health & Hosp. Corp.*, 164 F.3d 789, 793 (2d Cir. 1999)); that since Plaintiff cannot maintain her Title VII discrimination cause of action, her claim under Executive Law § 296 fails since both are analyzed under the same standard (*see id.* at 11); as there are no individual defendants in this action and no "primary violation", there is no basis upon which to make an Executive Law § 296(6) aider and abettor claim (*see id.* at 11-12 (quoting *Ferraro v. Ramapo Cent. Sch. Dist.*, No. 17-cv-2039, 2017 WL 6343686, at *4 (S.D.N.Y. Dec. 11, 2017))).

Further, Defendants contend that Plaintiff cannot make out her § 1981 claim because to do so against a municipal entity requires her to demonstrate "that a municipal policy caused a violation of her constitutional rights" (*id.* at 12 (citing *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 702 (1989)), but "Plaintiff is unable to demonstrate that the Defendants intentionally designed a municipal policy in order to deprive [her] of her constitutional rights on account of her race." (*Id.*) Alternatively, Defendants argue that since "§ 1981 claims are analyzed under the same burden shifting framework as claims under Title VII, Plaintiff's § 1981 claim fails" for the same reasons her Title VII discrimination claims do. (*Id.* at 12-13.) They further highlight that both Russell, the prior Executive Director, and McRae, Russell's replacement, are the same race as Plaintiff. (*See id.*) Finally, Defendants assert that since the Commission is an agency of the County, it is not capable of being sued, warranting its dismissal from this action. (*See id.* at 13.)

2. Plaintiff's Position

Addressing her *prima facie* case, Plaintiff asserts that: she is qualified for the Executive Director position (*see* Opp'n at 5; *see also id.* at 8-9); being denied the promotion to Executive Director was the adverse employment action she suffered due to her gender, race and national origin (*see id.* at 6); and, the alleged Syed Statements made to Plaintiff during her interview with Syed infer discrimination (*see id.; see also id.* at 7 (quoting Plaintiff's Depo. Tr. regarding the Syed Statements).) According to Plaintiff, Syed's "discriminatory comments led him to choose a lesser qualified male candidate due to his racial animus." (*Id.* at 8.) The Plaintiff would also have the Court reject Defendants' argument that because McRae is also African American, there could be no discrimination against Plaintiff. (*See id.* at 9 ("[D]iscrimination against one employee cannot be cured, or disproven, solely by favorable, or equitable, treatment of other employees of the same race or sex." (citing *Connecticut v. Teal*, 457 U.S. 440, 455 (1982)[3]).)

In support of her retaliation cause of action, and based upon claimed instances of protected activities for which she provides no citation to the record, Plaintiff claims she was stripped of supervisory duties and "kept out of trainings and meetings that affected her work." (*Id.* at 16.) Plaintiff vaguely implies that Defendants' reasons for subjecting her to the supposed adverse employment actions are weak and their weaknesses demonstrates that but for her complaints, Plaintiff would not have been subjected to illegal retaliation. (*See id.* at 16-17.)

While acknowledging that "[i]t is well-settled that there is no section 1981 violation for national origin discrimination" (*id.* at 17 (citing *Hooda v. Brookhaven Nat'l Lab.*, 659 F. Supp.2d 382, 392 (E.D.N.Y. 2009))), Plaintiff claims that race and national origin may be intertwined

---

[3] While Plaintiff cites to *Teal* as the source of this quoted statement, it is actually found in *Brown v. Henderson*, 257 F.3d 246, 252 (2d Cir. 2001), which cites to *Teal* and other cases in support of that statement. *See Brown*, 257 F.3d at 252-53 (collecting cases).

(*see id.* (citing *Thomson v. Odyssey House*, No. 14-cv-3857, 2015 WL 5561209, at *19 n.23 (E.D.N.Y. Sept. 21, 2015); *Deravin v. Kerik*, 335 F.3d 195, 201 92d Cir. 2003))[4]), and implies that hers is such a case (*see id.* at 18 ("Plaintiff identifies as African American of Haitian descent." (citing Plaintiff's Depo. Tr., 32:24-25)).)  She further implies that her complaints regarding her national origin should be viewed to support her § 1981 racial discrimination claim. (*See id.*)

Plaintiff asserts that as to her failure to file a notice of claim, after the February 2015 Nomination, she "then sent a claim letter to the County Attorney on or around March 4, 2105" that complied with the 90-day statutory period (*id.* at 19 (citing Plaintiff's Affidavit, ¶17 ("I had no choice but to file a discrimination complaint with the New York State Division on Human [R]ights after I already notified the County on March 4, 2015 and nothing was done."), and Ex. 11).)  Plaintiff contends that when no response was forthcoming, she proceeded to file the Verified Complaint and, therefore, "Defendants had full notice of Plaintiff's claims."  (*Id.*)  Plaintiff did not respond to the Defendants other arguments regarding her state law claims.

Plaintiff also raises a hostile work environment argument.  (*See id.* at 10-13.)  She contends that the Defendants have mistreated her since she first began working for the Commission, raising undated incidents, and baldly asserting that "[d]espite all of [her] complaints[,] the harassment has not ended," and "[a]ll of the comments and discriminatory actions were made by Defendants' supervisors and people in position of authority above that of Plaintiff."  (*See id.* at 10-11.)  Failing to point to any evidence, Plaintiff further asserts that the Defendants "did not take prompt and reasonable action regarding [her] complaints of

---

[4]  In *Thomson*, the district court was ruling on a motion to dismiss a complaint, *see* 2015 WL 5561209, at *1, and in *Deravin*, a panel of the Second Circuit vacated and remanded the granting a motion for judgment on the pleadings.

discrimination." (*Id.* at 12.)  Relying upon her vague assertions of complaints to supervisors, her Verified Complaint (which does not allege a hostile work environment), and her May 2018 letter to Mary Elizabeth Ostermann,[5] Plaintiff argues that the Defendants' reliance on the County's written, anti-discrimination policy is not enough to establish a viable *Ellerth/Faragher* defense. (*See id.* at 13 (citing *Zimmerman v. Assoc. First Capital Corp.*, 251 F.3d 376, 386 (2d Cir. 2001)).)

Plaintiff did not address the Defendants' argument that the Commission, as an agency of the County, is a non-suable entity.

### 3. The Defendants' Reply

Defendants reiterate that Plaintiff cannot make out her *prima facie* case of Title VII discrimination since she "points only to a single incident," *i.e.*, the Syed Statements, to infer unlawful discrimination, but that is insufficient to defeat the Summary Judgment Motion as it is hearsay (*see* Reply at 1) and is inconsistent with her Complaint (*see id.* at 2).  They also reiterate that Plaintiff's Title VII race and national origin claims fail because McRae is the same race and national origin as Plaintiff.  (*See id.* at 2-3 (citing *Barrella v. Vill. of Freeport*, 43 F. Supp.3d 136, 177 (E.D.N.Y. 2014); *Pointer v. Columbia Univ.*, No. 95-cv-8418, 1998 WL 898313, at *5 (S.D.N.Y. Dec. 22, 2998)).)

Defendants further contend that even if Plaintiff could make a *prima facie* case of discrimination, they have articulated legitimate, non-discriminatory reasons for their choice of

---

[5]  In support of her statement that "Defendants have not stopped the harassment of Plaintiff," Plaintiff cites to "Exhibit Letter dated May 18, 2018." (*See id.* at 12.)  The Court assumes Plaintiff is referring to Exhibit 12, a May 16, 2018 letter to Mary Elizabeth Ostermann, Director of the County's Office of Equal Employment Opportunity, which addresses Plaintiff's dissatisfaction with that Office's investigation into Plaintiff's May 2017 sexual harassment complaints, which are not part of this action.

McRae: his impressive vision for the Commission; his community involvement and connections, many of which Syed personally knew; and, that he was more personable and likable than Plaintiff (*id.* at 3 (citing Ex. R)). Moreover, Defendants assert that Plaintiff is unable to demonstrate that Defendants' reasons are pretextual as she relies on stale incidents dating back over a decade (*see id.* at 4-5) and she misquotes McRae's testimony (*see id.* at 5 (citing McRae's Depo Tr. at 38:8-18, 83-84)), none of which is enough for Plaintiff to sustain a challenge to the prudency of Defendants' decision to appoint McRae to the Executive Director position. (*See id.*)

Defendants argue that Plaintiff's hostile work environment claim fails for multiple reasons, to *wit*: she failed to plead a hostile work environment cause of action and cannot amend her Complaint (*see id.*); she failed to demonstrate that her work environment was permeated with discriminatory intimidation, ridicule and insult that was so severe or pervasive as to alter her work conditions; and, the incidents she raises are too temporally remote to support her claim and/or are unsupported hearsay allegations, which are not sufficient to sustain a hostile work environment claim. (*See id.* at 7-8.) Defendants continue by claiming entitlement to the application of the *Ellerth/Faragher* defense since the County had an anti-harassment policy in place, of which Plaintiff was aware, but unreasonably failed to avail herself. (*See id.* at 8-9.)

Defendants contend that Plaintiff's retaliation claim must fail since Plaintiff did not suffer any adverse employment action, and her attempt to establish earlier protected activity by now claiming in her Opposition that she had previously complained to Russell about Syed, is unavailing and wholly unsubstantiated. (*See id.* at 9.) Similarly, her new allegations of numerous other earlier complaints, as well as claims of being stripped of supervisory responsibilities and being "kept out of trainings and meetings" are all made without admissible evidentiary support. (*Id.* at 9-10)

III.  Discussion

   *A. Applicable Law*

      1.  The Summary Judgment Standard

   "Summary judgment is proper 'if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'"  *ING Bank N.V. v. M/V TEMARA, IMO No. 9333929*, 892 F.3d 511, 518 (2d Cir. 2018) (quoting Fed. R. Civ. P. 56(a)); *accord Jaffer v. Hirji*, 887 F.3d 111, 114 (2d Cir. 2018).  In ruling on a summary judgment motion, the district court must first "determine whether there is a genuine dispute as to a material fact, raising an issue for trial."  *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 202 (2d Cir. 2007) (internal quotations and citations omitted); *see also Ricci v. DeStefano*, 557 U.S. 557, 129 S. Ct. 2658, 2677 (2009) ("On a motion for summary judgment, facts must be viewed in the light most favorable to the nonmoving party *only* if there is a 'genuine' dispute as to those facts." (emphasis added; internal quotations and citation omitted)).

   In reviewing the record to determine whether there is a genuine issue for trial, the court must "construe the evidence in the light most favorable to the non-moving party," *Centro de la Comunidad Hispana de Locust Valley v. Town of Oyster Bay*, 868 F.3d 104, 109 (2d Cir. 2017) (quotations, alterations and citation omitted), and "resolve all ambiguities, and credit all factual inferences that could rationally be drawn, in favor of the party opposing summary judgment." *Davis-Garett v. Urban Outfitters, Inc.*, 921 F.3d 30, 45 (2d Cir. 2019) (quotations and citation omitted); *see also Hancock v. County of Rensselaer*, 823 F.3d 58, 64 (2d Cir. 2018) ("In determining whether there is a genuine dispute as to a material fact, we must resolve all ambiguities and draw all inferences against the moving party.").  "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine

issue for trial." *Ricci*, 557 U.S. at 586 (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348 (1986)); *accord Baez v. JetBlue Airways Corp.*, 793 F.3d 269, 274 (2d Cir. 2015).

"The moving party bears the initial burden of showing that there is no genuine dispute as to a material fact." *CILP Assocs., L.P. v. PriceWaterhouse Coopers LLP*, 735 F.3d 114, 123 (2d Cir. 2013) (quotations, brackets and citation omitted); *accord Jaffer*, 887 F.3d at 114. "[W]hen the moving party has carried its burden[,] . . . its opponent must do more than simply show that there is some metaphysical doubt as to the material facts . . . [,]" *Scott v. Harris*, 550 U.S. 372, 380 (2007) (quoting *Matsushita Elec.*, 475 U.S. at 586-87), and must offer "some hard evidence showing that its version of the events is not wholly fanciful[.]" *Miner v. Clinton County, N.Y.*, 541 F.3d 464, 471 (2d Cir. 2008) (quotations and citation omitted). The nonmoving party can only defeat summary judgment by "adduc[ing] evidence on which the jury could reasonably find for that party." *Lyons v. Lancer Ins. Co.*, 681 F.3d 50, 56 (2d Cir. 2012) (quotations, brackets and citation omitted). "'The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient' to defeat a summary judgment motion[,]" *Fabrikant v. French*, 691 F.3d 193, 205 (2d Cir. 2012) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)), and "[a] court cannot credit a plaintiff's merely speculative or conclusory assertions." *DiStiso v. Cook*, 691 F.3d 226, 230 (2d Cir. 2012); *see also Federal Trade Comm'n v. Moses*, 913 F.3d 297, 305 (2d Cir. 2019) ("[A] party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." (quoting *Fletcher v. Alex, Inc.*, 68 F.3d 1451, 1456 (2d Cir. 1995))); *Flores v. United States*, 885 F.3d 119, 122 (2d Cir. 2018) ("While we are required to resolve all ambiguities and draw all permissible factual inferences in favor of the non-moving party, . . . conclusory statements,

conjecture, or speculation by the party resisting the motion will not defeat summary judgment[.]" (quotations, alterations and citations omitted)); *Elliott v. Gouverneur Tribune Press, Inc.*, No. 13-cv-0055, 2014 WL 12598275, at *2 (N.D.N.Y. Sept. 29, 2014) ("[I]t is well-settled that a party opposing a motion for summary judgment may not simply rely on the assertions in its pleadings." (citing *Celotex Corp., v. Catrett*, 477 U.S. 317, 324 (1986); further citation omitted)). Since "there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party[,] . . . [i]f the evidence is merely colorable, . . . or is not significantly probative, . . . summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (quotations and citations omitted).

Summary judgment is warranted, "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322; *accord El-Nahal v. Yassky*, 835 F.3d 248, 252 (2d Cir. 2016), *cert. denied*, 137 S. Ct. 2187 (2017); *see also Crawford v. Franklin Credit Mgmt. Corp.*, 758 F.3d 473, 486 (2d Cir. 2014) ("[W]here the nonmoving party will bear the burden of proof on an issue at trial, the moving party may satisfy its burden [of showing the absence of a genuine dispute as to any material fact] by pointing to an absence of evidence to support an essential element of the nonmoving party's case[.]" (quotations, alterations and citation omitted)). "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 322-23; *accord Crawford*, 758 F.3d at 486; *see also Chandok v. Klessig*, 632 F.3d 803, 812 (2d Cir. 2011) ("Where the undisputed facts reveal that there is an absence of sufficient proof as to one essential element of a claim, any factual disputes with

respect to other elements become immaterial and cannot defeat a motion for summary judgment."). "The moving party is entitled to a judgment as a matter of law because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex*, 477 U.S. at 323 (quotations and citation omitted). Accordingly, when "the burden of persuasion at trial would be on the non-moving party . . . the party moving for summary judgment may satisfy his burden of production under Rule 56 in either of two ways: (1) by submitting evidence that negates an essential element of the non-moving party's claim, or (2) by demonstrating that the non-moving party's evidence is insufficient to establish an essential element of the non-moving party's claim." *Nick's Garage*, 875 F.3d at 114 (quotations and citation omitted); *see also DeRogatis v. Bd. of Trs. of Welfare Fund of Int'l Union of Operating Eng'rs Local 15, 15A, 15C & 15D, AFLCIO*, 904 F.3d 174, 187 (2d Cir. 2018) (holding that when the ultimate burden of proof at trial would be on the non-moving party, the moving party "may satisfy their burden of production under Rule 56 by negating an essential element of the [non-moving party's] claim, whether by submitting undisputed evidence to that effect or by demonstrating the insufficiency of the [non-moving party's] own evidence" (quotations, alterations and citation omitted)); *see also Fuertado v. City of N.Y.*, 337 F. Supp.2d 593, 599 (S.D.N.Y. 2004)("The moving party may use a memorandum or brief to 'point to' the absence of evidence and thereby shift to the non-movant the obligation to come forward with admissible evidence supporting its claim." (citations omitted)); *Olutosin v. Lee*, No. 14-cv-0685, 2018 WL 4954107, at *8 (S.D.N.Y. Oct. 12, 2018)(same (citing *Fuertado*)).

> A district court is "under no obligation to engage in an exhaustive search of the record" when considering a motion for summary judgment. *Jones v. Goord*, 435 F. Supp.2d 221, 259 (S.D.N.Y. 2006) (citing *Amnesty Am. v. Town of W. Hartford*, 288

F.3d 467, 470–71 (2d Cir. 2002)); *see also* Fed. R. Civ. P.
56(c)(3); *Lee v. Alfonso*, 112 F. App'x 106, 107 (2d Cir. 2004). A
party opposing a motion for summary judgment must "specifically
respond to the assertion of each purported undisputed fact . . . and,
if controverting any such fact, [must] support its position by citing
to admissible evidence in the record." *Baity v. Kralik*, 51 F.
Supp.3d 414, 418 (S.D.N.Y. 2014) (quoting *Risco v. McHugh,* 868
F. Supp.2d 75, 86 n.2 (S.D.N.Y. 2012)); *see also* Fed. R. Civ. P.
56(c)(1)(A)–(B); *Kalola v. Int'l Bus. Machines Corp.*, No. 13-CIV-
7339, 2017 WL 5495410, at *4 (S.D.N.Y. Jan. 9, 2017) ("Plaintiff
cannot expect the Court to comb the record to find evidence not
highlighted in [Plaintiff's] motion papers—summary judgment is
not a game of hide and seek.").

*Green v. Mount Sinai Health Sys., Inc.*, No. 17-cv-3999, 2019 WL 4392691, at *3 (S.D.N.Y.

Sept. 12, 2019). "Accordingly, to the extent that Plaintiff's [Opposition] assert[s] arguments

without citations to the record, the Court need not consider them." *Id.*

## 2. Discrimination Claims Under Title VII and NYSHRL

Title VII makes it unlawful for an employer to discriminate against any individual

"because of such individual's race, . . . sex, or national origin." U.S.C. § 2000e-2(a)(1). "Claims

of sex-based discrimination under Title VII and the NYHRL are analyzed using the familiar

burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93

S. Ct. 1817, 36 L. Ed.2d 668 (1973)." *Walsh v. New York City Housing Auth.*, 828 F.3d 70, 74-

75 (2d Cir. 2016); *see also Menaker v. Hofstra Univ.*, 935 F.3d 20, 2019 WL 3819631, at *4 (2d

Cir. Aug. 15, 2019) ("Because it is often difficult to obtain direct evidence of discriminatory

intent, we employ a 'burden-shifting framework' (commonly identified by reference to the

Supreme Court case from which it derives, *McDonnell Douglas Corp. v. Green*)[] to

progressively sharpen the inquiry into the elusive factual question of intentional discrimination."

(quotations, alterations and footnotes omitted)). At the first step of the *McDonnell Douglas*

analysis, a plaintiff "must establish a *prima facie* case of sex discrimination by demonstrating

that (1) she was within the protected class; (2) she was qualified for the position; (3) she was subject to an adverse employment action; and (4) the adverse action occurred under circumstances giving rise to an inference of discrimination." *Walsh*, 828 F.3d at 75 (quotations and citation omitted). Claims of unlawful discrimination based upon race and/or national origin are also evaluated under the *McDonnell Douglas* burden-shifting framework. *See, e.g., Kirkland v. Cablevision Sys.*, 760 F.3d 223 (2d Cir. 2014)(re: race discrimination); *Sethi v. Narod*, 12 F. Supp.3d 505, 521-22 (E.D.N.Y. 2014)(re: national origin); *see also Fahrenkrug v. Verizon Srvs. Corp.*, 652 F. App'x 54, 56 n.3 (2d Cir. 2016)("We apply the same analytical framework to review claims under Title VII and the NYSHRL." (citing *Pucino v. Verizon Wireless Commc'ns, Inc.*, 618 F.3d 112, 117 n.2 (2d Cir. 2010))).

"The burden of establishing a *prima facie* case is not onerous, and has been frequently described as minimal." *Walsh*, 828 F.3d at 75 (quoting *Norton v. Sam's Club*, 145 F.3d 114, 118 (2d Cir. 1998) (internal quotation marks omitted)); *see also Beyer v. County of Nassau*, 524 F.3d 160, 163 (2d Cir. 2008) (holding that the burden of establishing a *prima facie* case of discrimination is "*de minimis*: it is neither onerous, nor intended to be rigid, mechanized or ritualistic." (quotations and citation omitted)). "Nonetheless, a plaintiff's case must fail if she cannot carry this preliminary burden." *Beyer*, 524 F.3d at 163; *see also Fahrenkrug*, 652 F. App'x at 56 (holding that the failure to establish any one of the necessary elements for a *prima facie* case of discrimination mandates dismissal of the plaintiff's claims).

"If the plaintiff successfully establishes a *prima facie* case, 'the burden then must shift to the employer to articulate some legitimate, nondiscriminatory reason for the adverse employment action.'" *Walsh*, 828 F.3d at 75 (quoting *United States v. Brennan*, 650 F.3d 65, 93 (2d. Cir. 2011) (internal quotation marks omitted)); *accord Menaker*, 2019 WL 3819631, at * 4. With

respect to a plaintiff's Title VII discrimination claim, "[i]f the employer carries that burden, 'the plaintiff's admissible evidence must show circumstances that would be sufficient to permit a rational finder of fact to infer that the defendant's employment decision was more likely than not based in whole or in part on discrimination.'" *Walsh*, 828 F.3d at 75 (quoting *Feingold v. New York*, 366 F.3d 138, 152 (2d Cir. 2004)); *see also Kirkland v. Cablevision Sys.*, 760 F.3d 223, 225 (2d Cir. 2014) (holding that once the employer articulates a legitimate, nondiscriminatory reason for its actions, "the burden then shifts back to the plaintiff to show that the employer's explanation is a pretext for . . . discrimination. . . . [O]nce the employer has made a showing of a neutral reason for the complained of action, to defeat summary judgment [] the employee's admissible evidence must show circumstances that would be sufficient to permit a rational finder of fact to infer that the employer's employment decision was more likely than not based in whole or in part on discrimination." (quotations, alterations and citations omitted)).

"The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff, . . . and the governing standard is simply whether the evidence, taken as a whole, is sufficient to support a reasonable inference that prohibited discrimination occurred[.]" *Johnson v. Schmid*, 750 F. App'x 12, 16 (2d Cir. 2018) (quotations and citations omitted); *see also St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506-07 (1993) ("Under the *McDonnell Douglas* scheme, establishment of the prima facie case in effect creates a presumption that the employer unlawfully discriminated against the employee. . . . To establish a 'presumption' is to say that a finding of the predicate fact (here, the prima facie case) produces a required conclusion in the absence of explanation" (here, the finding of unlawful discrimination). . . . Thus, the *McDonnell Douglas* presumption places upon the defendant the burden of producing an explanation to rebut the prima facie case—*i.e.*, the

burden of producing evidence that the adverse employment actions were taken for a legitimate, nondiscriminatory reason. . . . The defendant must clearly set forth, through the introduction of admissible evidence, reasons for its actions which, if believed by the trier of fact, would support a finding that unlawful discrimination was not the cause of the employment action. . . . It is important to note, however, that although the *McDonnell Douglas* presumption shifts the burden of production to the defendant, the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." (quotations, alterations, emphasis and citations omitted)).

### 3. Retaliation Claims Under Title VII and NYSHRL

"To prevail on a retaliation claim, 'the plaintiff need not prove that her underlying complaint of discrimination had merit,' *Lore v. City of Syracuse*, 670 F.3d 1127, 157 (2d Cir. 2012), but only that it was motivated by a 'good faith, reasonable belief that the underlying employment practice was unlawful,' *Reed v. A.W. Lawrence & Co.*, 95 F.3d 1170, 1178 (2d Cir. 1996 (citation and internal quotation marks omitted)." *Kwan v. Andalex Grp.*, LLC, 737 F.3d 834, 843 (2d Cir. 2013). "Federal and state law retaliation claims are reviewed under the burden-shifting approach of *McDonnell Douglas* . . . ." *Id.* (citing *Hicks v. Baines*, 593 F.3d 159, 164 (2d Cir. 2010); further citations omitted); *see also Jones v. Rochester City Sch. Dist.*, 676 F. App'x 95, 98 (2d Cir. 2017)(same); *Green*, 2019 WL 4392691, at *3 (stating the elements of a retaliation claim under Title VII and the NYSHRL are "identical")(collecting cases).

Under the *McDonnell Douglas* framework, a plaintiff claiming retaliation must first make a *prima facie* showing that: (1) she participated in a protected activity; (2) defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action. *See Kwan*, 737 F.3d at 844 (quoting *Jute*

*v. Hamilton Sundstrand Corp.*, 420 F.3d 166, 173 (2d Cir. 2005)); *Terry v. Ashcroft*, 336 F.3d 128, 141 (2d Cir. 2003)("To establish a *prima facie* case of retaliation, an employee must show '(1) participation in a protected activity known to the defendant, (2) an employment action disadvantaging the plaintiff, and (3) a causal connection between the protected activity and the adverse employment action.'" (internal citations omitted)); *Jones*, 676 F. App'x at 97; *Amaya v. Ballyshear LLC*, 295 F. Supp.3d 204, 221 (E.D.N.Y. 2018).

"An adverse employment action is 'a materially adverse change in the terms and conditions of employment.'" *Fahrenkrug*, 652 F. App'x at 56 (quoting *Sanders v. N.Y.C. Human Res. Admin.*, 361 F.3d 749, 755 (2d Cir. 2004)); *accord Davis v. N.Y.C. Dep't of Educ.*, 804 F.3d 231, 235 (2d Cir. 2015). It "'must be more disruptive than a mere inconvenience or an alteration of job responsibilities and might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices [] unique to a particular situation.'" *Fox v. Costco Wholesale Corp.*, 918 F.3d 65, 71-72 (2d Cir. 2019)(quoting *Patrolmen's Benevolent Ass'n of City of N.Y. v. City of N.Y.*, 310 F.3d 43, 51 (2d Cir. 2002)). Rather, it is "any action that 'could well dissuade a reasonable worker from making or supporting a charge of discrimination.'" *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 90 (2d Cir. 2015)(quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006)); *see also Amaya*, 295 F. Supp.3d at 222 (same).

"'Title VII claims must be proved according to traditional principles of but-for causation,' which 'requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer.'" *Kwan*, 737 F.3d at 845 (quoting *Univ. of Tex. SW Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013)); *see also Jones*, 676 F.

App'x at 97; *Amaya*, 295 F. Supp.3d at 222. "The causal connection may be demonstrated by '(a) indirectly showing that the protected activity was followed closely by discriminatory treatment; (b) indirectly through other evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (c) directly through evidence of retaliatory animus.'" *Amaya*, 295 F. Supp.3d at 222 (quoting *LaSalle v. City of N.Y.*, No. 13-cv-5109, 2015 WL 1442376, at *2 (S.D.N.Y. Mar. 30, 2015); further citation omitted).

### 4. § 1981 Racial Discrimination Claims

> The Second Circuit has construed [§1981] to prohibit employment discrimination on the basis of race. *See Lauture v. Int'l Bus. Machs. Corp.*, 216 F.3d 258, 260-61 (2d Cir. 2000) (holding that § 1981 covers claims of employment discrimination brought both by employees working under contract and at-will employees). [It] has instructed that in order to plead a claim for race discrimination under § 1981, "plaintiffs must allege facts supporting the following elements: (1) [the] plaintiffs are members of a racial minority; (2) [the] defendants' intent to discriminate on the basis of race; and (3) discrimination concerning one of the statute's enumerated activities." *Brown v. City of Oneonta*, 221 F.3d 329, 339 (2d Cir. 2000). "This section thus outlaws discrimination with respect to the enjoyment of benefits, privileges, terms, and conditions of a contractual relationship, such as employment . . . ." *Patterson v. County of Oneida*, 375 F.3d 206, 224 (2d Cir. 2004).

*Toussaint v. NY Dialysis Servs., Inc.*, 230 F. Supp.3d 198, 211 (S.D.N.Y. 2017).

Section 1981 racial discrimination claims "are analyzed under the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed.2d 668 (1973)." *Ruiz v. County of Rockland*, 609 F.3d 486, 491 (2d Cir. 2010); *see also McGill v. Univ. of Rochester*, 600 F. App'x 789, 790 (2d Cir. 2015)("We analyze Title VII, Section 1981, and NYSHRL discrimination claims under the same burden shifting framework as first set forth by the Supreme Court in *McDonnell Douglas* . . . ." (citations omitted)); *Barella v.*

*Village of Freeport*, 16 F. Supp.3d 144, 158 (E.D.N.Y. 2014)(§ 1981 claims are all evaluated under the three-step burden-shifting framework of *McDonnell Douglas*).

### 5. Aiding and Abetting Claims

The NYSHRL allows for individual liability where a defendant aided and abetted the unlawful discriminatory acts of others. *See* N.Y. Exec. Law § 296(6); *see also Gorman*, 146 F. Supp.3d at 521-22 (quoting *EEOC v. Suffolk Laundry Servs., Inc.*, 48 F. Supp.3d 497, 523 (E.D.N.Y. 2014)). Thus, "a co-worker who 'actually participates in the conduct giving rise to a discrimination claim'" can be "held liable under the NYSHRL even though that co-worker lacked the authority to either hire or fire the plaintiff." *Feingold v. New York*, 366 F.3d 138, 158 (2d Cir. 2004)(quoting *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1317 (2d Cir. 1995)[6]); *see also Rojas v. Roman Catholic Diocese of Rochester*, 660 F.3d 98, 107 n.10 (2d Cir. 2011)("[W]hile an individual defendant with supervisory control may not be held personally liable under Title VII, an individual defendant may be held liable under the aiding and abetting provision of the NYSHRL if he actually participates in the conduct giving rise to a discrimination claim." (internal quotations and citations omitted)). "Aiding and abetting liability requires that the aider and abettor share the intent or purpose of the principal actor, and there can be no partnership in an act where there is no community of purpose." *Brice v. Sec. Operations Sys., Inc.*, No. 00-cv-2438, 2001 WL 185136, at *4 (S.D.N.Y. Feb. 26, 2001)(internal quotation marks and citations omitted). "Consequently, to find that a defendant actually participated in the discriminatory conduct requires a showing of direct, purposeful participation." *Id.* (internal quotation marks and citation omitted). Stated differently, there must be sufficient evidence of the individual

---

[6] *Tomka* was abrogated on other grounds by *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742 (1998).

defendant's connection to the alleged discrimination to warrant the imposition of NYSHRL aider and abettor liability. *See Guzman*, 2013 WL 5807058, at *22. It is axiomatic, then, that the predicate to imposing individual aider and abettor liability under § 296(6) is the finding of impermissible discrimination.

### B. The Instant Case

#### 1. Claims Against the Commission

> In New York, agencies of a municipality are not suable entities. The only proper defendant in a lawsuit against an agency of a municipality is the municipality itself, not the agency through which the municipality acted. This is so because, "[u]nder New York law, departments that are merely administrative arms of a municipality have no separate legal identity apart from the municipality and therefore cannot be sued."

*New York. Omnipoint Commc'ns, Inc. v. Town of LaGarange*, 658 F.Supp.2d 539, 552 (S.D.N.Y. 2009)(quoting *Santiago v. City of N.Y.*, No. 06-15508, 2008 WL 2854261, at *3 (S.D.N.Y. July 21, 2008); collecting cases); *see also Rose v. County of Nassau*, 904 F. Supp.2d 244, 247 (E.D.N.Y. 2012)(dismissing complaint against the Nassau County Police Department as a non-suable entity since it is an administrative arm of the County of Nassau); *Human Resource Research and Mgmt. Grp., Inc. v. County of Suffolk*, 687 F. Supp.2d 237, 241 n.1 (E.D.N.Y. 2010)(quoting *Human Resource Research*); *Chodkowski v. County of Nassau*, No. 16-cv-5770, 2017 WL 10637956, at *5 (E.D.N.Y. Nov. 30, 2017)(holding neither Nassau County Police Department nor Nassau County Civil Service Commission are suable entities as both are administrative entities of the County); *McJunkin v. Suffolk County Civil Serv.*, No. 13-cv-5045, 2014 WL 3490720, at *2 (E.D.N.Y. July 10, 2014)(holding that the Suffolk County Civil Service had no separate legal identity and was, therefore, incapable of being sued). The Defendants contend that since the Commission "is an agency of the County of Nassau, dismissal is warranted as to the claims against it." (Support Memo at 13.) The Court agrees. Even if that were not the

case, since Plaintiff has failed addressed this issue in her Opposition, the Court deems her claims against the Commission abandoned. *See Taylor v. City of N.Y.*, 269 F. Supp.2d 68, 75 (E.D.N.Y. 2003)("Federal courts may deem a claim abandoned when a party moves for summary judgment on one ground and the party opposing summary judgment fails to address the argument in any way.")(citing *Douglas v. Victor Capital Group*, 21 F. Supp.2d 379, 393 (S.D.N.Y. 1998)(collecting cases)); *see also Patacca v. CSC Holdings, LLC*, No. 16-cv-0679, 2019 WL 1676001, at *13 (E.D.N.Y. Apr. 17, 2019)(discussing abandonment of claims; collecting cases); *Green*, 2019 WL 4392691, at *3 (collecting cases).

### 2. Plaintiff's Title VII Discrimination Claims

While there is no dispute that Plaintiff is a female African American of Haitian descent, and even assuming, *arguendo*, that she was qualified for the Executive Director position, to which she was not promoted, the alleged adverse action (*see* Opp'n at 6 (citing *Stewart v. City of N.Y.*, No. 11-cv-6935, 2012 WL 2849779, at *6 (S.D.N.Y. July 10, 2012)(stating a failure to promote qualifies as an adverse employment action)), Plaintiff cannot make out a *prima facie* case of unlawful discrimination. *See Walsh*, 828 F.3d at 75 (delineating the four components of a plaintiff's *prima facie* discrimination case) (quotations and citation omitted). Plaintiff relies upon the Syed Statements as giving rise to an inference of discrimination, but her reliance is misplaced; Syed denies making the Statements (*see* Syed Depo. Tr. (Ex. D), 30:4-12), and Plaintiff's only substantiation is her deposition testimony (*see* Plaintiff's Depo. Tr. (Ex. 3), 312:2-9), which is inadmissible hearsay that cannot be relied upon to defeat summary judgment. *See, e.g., Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d 62, 71 (2d Cir. 2000) ("[S]tatements reported to the plaintiff[] and not supported by affidavits are inadmissible hearsay"); *Patacca v. CSC Hldgs., LLC*, No. 16-cv-679, 2019 WL 1676001, at *12 n.9

(E.D.N.Y. Apr. 17, 2019)(declining to consider inadmissible hearsay evidence in deciding summary judgment motion); *G.I. Home Dev. Corp. v. Weis*, No. 07-cv-4115, 2011 WL 4434223, at *11 (E.D.N.Y. Sept. 22, 2011)(declining to consider inadmissible hearsay plaintiff offered "to create a[] genuine issue of material fact"); *Pamphile v. Tishman Speyers Props., L.P.*, No. 03-cv-5964, 2006 WL 1806505, at *5 n.2 (E.D.N.Y. June 29, 2006)("Hearsay evidence is inadmissible on a motion for summary judgment.")(citations omitted). Moreover, to the extent that Plaintiff argues that Syed did not present her qualifications, the evidence does not support same. (*See* Opp'n at 6-7 (citing Syed Depo. Tr. (Ex 6), 20:23-25)). Plaintiff cites Syed's deposition testimony, which establishes only that no other member of the Board interviewed Plaintiff or McRae. Nothing in that testimony establishes an inference of discrimination. Moreover, the Plaintiff has not presented any evidence to infer that the Board, County Executive, or the Legislature, the ultimate decision-making body, acted in a manner giving rise to an inference of discrimination. Therefore, Plaintiff's discrimination causes of action fail. *See Beyer*, 524 F.3d at 163 (stating that were a plaintiff is unable to establish a *prima facie* case of discrimination, the "case must fail"); *Williams v. R.H. Donnelley, Corp.*, 368 F.3d 123, 126 ("[A] Title VII plaintiff's claims nevertheless fail if she cannot make out a prima facie case of discrimination."); *Fahrenkrug*, 652 F. App'x at 56 (holding that failure to establish any one of the components of a *prima facie* case of discrimination mandates dismissal of the discrimination claim).

### 3. Plaintiff's Title VII Retaliation Claim

In attempting to establish her prima *facie case* of unlawful retaliation, Plaintiff begins by claiming she made several complaints, *i.e.*, participating in a protected activity, *to wit*: having complained to Russell about discrimination (*see* Opp'n at 15 (citing Plaintiff's Depo. Tr. (Ex. 2), 52:17-53:11); making "at least eight (8) complaints to Defendants' Head of EEO[D,] Mary

Elizabeth Osterman[,] regarding discrimination and harassment" (*id.*); allegedly sending a letter addressed to the County Executive, with a copy sent to the County Attorney (*see id.*); filing her Verified Complaint (*see id.*); sending a December 17, 2017 to Laura Curran, the then-newly elected County Executive, complaining of discrimination (*see id.* at 15-16); and making a written complaint to Defendants on May 16, 2018 (*see id.* at 16).

Initially, Plaintiff's alleged complaint to Russell about Syed's treatment of her demonstrates only her belief that Syed generally does not like her, especially because of her opinions, as well as her belief regarding Pakistani men.  In particular, Plaintiff testified:

> [W]hen I came back from the interview, I went into Dan[ Russell]'s office and I said, Dan, . . . you know Commissioner Syed never liked me and I've always complained to you about how Commissioner Syed treated me and how when he comes in the office and he would greet you and [McRae] and never greet me and how Commissioner Syed did not like the fact that I voiced my opinions many, many times.
> Throughout — it was common knowledge that I did not approve of the fact that several of the new commissioners were coming in.  They were not really a true representative of Nassau County.  There were two or three female commissioners that Commissioner Syed had kicked off the board and — because they were female, and I knew that, and I understand because of his culture and . . . because of his national origin, because of his culture he did not approve — not did not approve, but working with women would be hard, and I understand all that.
> So I said to Dan, there's no way I'm gonna get this position, and then Dan said to me, Maggie, just do what you gotta do, and then I called Commissioner Syed back and I said, Commissioner Syed, is there anything else you want from me, and then he said to me, can you send me over a resume.

(Plaintiff's Depo. Tr. (Ex. 3), 52:17-53:17.)  Even assuming Plaintiff did complain to Russell about Syed, there is nothing in this testimony that indicates any unlawful discriminatory basis. Moreover, Plaintiff's narrative explaining her perception of Syed's supposed bias, which is interjected in this testimony, fails to demonstrate she complained to Russell about Syed's alleged

unlawful discriminatory treatment of her. Other than this self-serving, uncorroborated testimony, Plaintiff offers no evidence substantiating her claim that she complained to Russell about Syed.

As to Plaintiff's other supposed complaints, she has not provided any citations to the record to support them, and "Plaintiff cannot expect the Court to comb the record to find evidence not highlighted in [her] motion papers [as] summary judgment is not a game of hide and seek." *Kalola v. Int'l Bus. Machines Corp.*, No. 13-cv-7339, 2017 WL 5495410, at *4 (S.D.N.Y. Jan. 9, 2017). "Accordingly, to the extent Plaintiff's [Opposition] assert[s] arguments without citation to the record, the Court need not consider them." *Green*, 2019 WL 4392691, at *3.

Plaintiff's filing of the Verified Complaint was a protected activity, which occurred after the February 2015 Nomination, when Plaintiff was not promoted. (*See also* Support Memo. at 5 ("For purposes of this motion only, Defendants do not dispute that Plaintiff engaged in a protected activity when she filed [the Verified Complaint].").) However, to demonstrate retaliation, this is not enough; Plaintiff must also show that after this protected activity, she suffered an adverse employment action or actions that would not have occurred but for her engagement in that protected activity. *See, e.g., Terry*, 336 F.3d at 141 (instructing that to establish a *prima facie* case of retaliation, in addition to showing participation in a protected activity known to defendant, plaintiff must also show "an employment action disadvantaging the plaintiff" and "a causal connection between the protected activity and the adverse employment action"). The proffered adverse employment actions to which Plaintiff claims she was subjected were being "stripped of supervisory duties" and being "kept out of trainings and meetings that affected her work." (Opp'n at 16 (citing Plaintiff's Affidavit (Ex. 8), ¶22; Plaintiff's Depo. Tr. (Ex. 2), 113:24-114:7).) First, the only supervisory duty which Plaintiff identifies as being

stripped from her was monitoring whether staff would be "in or out". (*See* Plaintiff's Depo Tr. (Ex. 2), 114:4.) This is not a materially adverse change in the terms and conditions of Plaintiff's employment. *Cf., Fox*, 918 F.3d at 72 (holding adverse employment action "must be more disruptive than . . . an alteration of job responsibilities;" there must be "significantly diminished material responsibilities"). Second, regarding the meetings from which Plaintiff was allegedly excluded, Plaintiff's vague and otherwise unsubstantiated statements about the meetings are insufficient to establish that she suffered a materially adverse change in the conditions of her employment. *See, e.g., Chabad Lubavitch of Litchfield Count, Inc. v. Litchfield Historic Dist. Comm'n*, 768 F.3d 183, 197 n.10 (2d Cir. 2014)("Because the affidavit failed to show that these contentions could be established at trial by competent evidence, it cannot create a triable issue of fact."); *see also Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir. 1985)(cautioning that permitting parties "to defeat a motion for summary judgment by offering purely conclusory allegations of discrimination, absent any concrete particulars" would necessitate a trial in all discrimination cases). Third, Plaintiff cites only to her Affidavit to support her claim that McRae "stopped [her] from getting training" (Ex. 8, ¶22), providing no context for that statement; nor does she cite to any other record evidence to support this argument. *Cf., e.g., Jeffreys v. City of N.Y.*, 426 F.3d 549, 554 (2d Cir. 2005)("At the summary judgment stage, a nonmoving party 'must offer some *hard evidence* showing that its version of the events is not wholly fanciful.'" (emphasis added))(quoting *D'Amico v. City of N.Y.*, 132 F.3d 145, 149 (2d Cir. 1998)). In any event, record evidence establishes that Plaintiff did attend housing training that she claims to have been denied permission to attend (*see* Plaintiff's Depo. Tr. (Ex. B), 135:17-20 (testifying to eventually being granted permission to attend training), and 140:8-12 ("Q: Is there any training that you requested to go to that [McRae] told you that you could not attend and you ultimately did not attend? A:

No.")), which training occurred prior to filing the Verified Complaint (*see* Ex. P (Commission

Field Visit Report re: Plaintiff's April 24, 2015 attendance at housing training)).  Therefore,

Plaintiff's "denial of training" argument is ineffective to show an adverse employment action.

Further, even had Plaintiff had been denied training after the filing of her Verified Complaint,

such a denial cannot be viewed as an adverse employment action in this instance since Plaintiff

has not pointed to any evidence that the alleged denial caused her a material employment harm.

*See, e.g., Miller v. Ithaca*, No. 3:10-cv-597, 2012 WL 1977974, at *5 (N.D.N.Y. June 1,

2012)("When an employee cannot show material harm from a denial of training, such as a failure

to promote or a loss of career advancement opportunities, there is no adverse employment

action." (quoting *Hill v. Rayboy-Brauestein*, 467 F. Supp.2d 336, 352 (S.D.N.Y. 2006)); *see also*

*Kravitz v. N.Y.C. Trans. Auth.*, No 94-cv-5901, 2001 WL 1646513, at *6 (E.D.N.Y. Dec. 18,

2001)(finding where plaintiff "present[ed] no evidence, beyond his conclusory allegations, that

he was harmed by not receiving training" failed to raise a factual dispute that would defeat

summary judgment).  Moreover, "[t]he mere fact that Plaintiff would have liked to attend

additional training courses standing alone is insufficient to constitute an adverse employment

action."  *Miller*, 2012 WL 1977974, at *5.  In sum, "Plaintiff's retaliation claim necessarily fails

as Plaintiff cannot establish that any adverse employment actions were taken against [her] as a

result of her protected activity."  (Support Memo. at 6.)  *See also DeRogatis*, 904 F.3d at 187

(holding that party seeking summary judgment "may satisfy [its] burden of production under

Rule 56 by negating an essential element of the [non-moving party's] claim . . . by demonstrating

the insufficiency of the [non-moving party's ] own evidence" (quotations, alternations, and

citations omitted)); *Crawford*, 758 F.3d at 486 (same).

4. <u>Plaintiff's Purported Hostile Work Environment Claim</u>

In her Rule 56.1 Response, Plaintiff contended she "also alleged a hostile work environment" claim. (Rule 56.1 Response, ¶1.) A fair reading of the Complaint shows otherwise; while in the "FACTS" section of her Complaint, Plaintiff states certain work situations, which she characterizes as hostile (*see* Complaint, ¶¶95, 102, 111, 119), she does not raise a hostile work environment cause of action based upon those allegations. (*Cf.*, First-Sixth Causes of Action, Complaint.) Nor can Plaintiff seek to amend her Complaint to add that cause of action by way of her Opposition. *See, e.g., Clean Coal Techs., Inc. v. Leidos, Inc.*, 377 F. Supp.3d 303, 321 (S.D.N.Y. 2019) ("It is axiomatic that a complaint cannot be amended by the briefs in opposition to a motion to dismiss." (quoting *LLM Bar Exam, LLC v. Barbri, Inc.*, 271 F. Supp.3d 547, 580 (S.D.N.Y. 2017)); *see also, e.g., Agu v. Rhea*, No. 09-cv-4732, 2010 WL 5186839, at *1 n.2 (E.D.N.Y. Dec. 15, 2010)(noting that court "will not consider *causes of action* first raised in Plaintiff's opposition papers") (emphasis in original); *Nesheiwat v. City of Poughkeepsie, N.Y.*, No. 11-cv-7072, 2013 WL 620267, at *3 (S.D.N.Y. Feb. 13, 2013)("Plaintiff may not amend his . . . Complaint through legal arguments raised for the first time in his opposition papers." (citing *Wright v. Ernst & Young LLP*, 152 F.3d 169, 178 (2d Cir. 1998), *cert denied*, 525 U.S. 1104 (1999)).

In any event:

> [t]o establish a prima facie case of hostile work environment, the plaintiff must show that the discriminatory harassment was "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment," and "that a specific basis exists for imputing" the objectionable conduct to the employer. *Perry v. Ethan Allen, Inc.,* 115 F.3d 143, 149 (2d Cir. 1997) (internal quotation marks omitted). It is axiomatic that the plaintiff also must show that the hostile conduct occurred because of a protected characteristic. *Alfano v. Costello,* 294 F.3d 365, 374 (2d Cir. 2002).

*Tolbert v. Smith*, 790 F.3d 427, 439 (2d Cir. 2015). "A plaintiff must show not only that she subjectively perceived the environment to be abusive, but also that the environment was objectively hostile and abusive." *Gorsynski v. JetBlue Airways Corp.*, 596 F.3d 93, 102 (2d Cir. 2010).

Assuming, *arguendo*, that Plaintiff subjectively believed the work environment at the Commission was hostile, she has presented no admissible evidence that a reasonable person would objectively consider that environment to be hostile and abusive.[7] Moreover, Plaintiff does not cite to any evidence showing she complained of a hostile work environment, such that the Defendants should be held liable for their purported non-response to said complaints. (*See* Opp'n at 12-13.) This is especially noteworthy because Plaintiff, an attorney (*see* Plaintiff's Depo. Tr. (Ex. B), 69:17-19), is the EEOD Representative for the Commission, but did not file a hostile work environment complaint with the EEOD. (*See* Part II(A)(6).)

5. Plaintiff's § 1981 Claim

To support her § 1981 claim, Plaintiff argues that "[d]uring her interview with Chairman Syed[,] he make it clear that he not only wanted a man, but he was seeking to hire employees of Pakistani and Indian descent." (Opp'n at 18 (without citation to the record).) Assuming Plaintiff is referring to the Syed Statements, neither addresses race; thus, even if those Statements were not uncorroborated hearsay evidence, they cannot establish an intent to discriminate on the bases of race. Similarly, Plaintiff having "heard comments" "[o]ver the years" "regarding Haitians

---

[7] For example, Plaintiff: raises incidents without any temporal context or that do not demonstrate severity or pervasiveness (*see* Opp'n at 10 (citing Plaintiff's Depo. Tr. (Ex. 2), 127:6-25; Plaintiff's Depo. Tr. (Ex. 3), 33:12-23)); refers generally to the Syed Statements, but without citation to the record and which, in any event, are uncorroborated hearsay (*see id.* at 11); and, misstates her deposition testimony to make it seem that McRae believed Plaintiff should be fired for being Haitian as opposed to misleading the Commission. (*see* Opp'n at 11 (citing Ex. 2, Plaintiff's Depo. Tr., 129:12-20).)

having AIDS" (*id.* (without citation to the record)) does not support her § 1981 claim because, in addition to being unsubstantiated, those comments are not racially discriminatory. Finally, the supposed comments made by McRae regarding Plaintiff's Haitian heritage (*see id.* (without citation to the record)), are unavailing to sustain Plaintiff's § 1981 cause of action since, again, they do not pertain to Plaintiff's race. In any event, the one comment by McRae to which Plaintiff alludes, concerning a belief she should be fired, is mischaracterized; examined in context, Plaintiff testified that McRae commented to her that she should have been fired for lying to the Commission for claiming she was Spanish. (*See* Ex. E, Plaintiff's Depo. Tr., 47:20-25.[8])

Moreover, Plaintiff fails to address the Defendants' further argument that Plaintiff is required to "demonstrate that a municipal policy caused a violation of her constitutional rights." (Support Memo at 12 (citing *Jett*, 491 U.S. at 702)). The *Jett* Court held that "to prevail against [a municipal entity, a plaintiff] must show that the violation of h[er] § 1981 . . . was caused by a custom or policy within the meaning of *Monell* and subsequent cases." *Id.* Plaintiff has not pointed to any evidence of a County custom or policy that caused her alleged § 1981 injury. Therefore, even assuming, *arguendo*, a § 1981 violation in this case, there is no basis to impute that liability for it upon Defendants.

### 6. Failure to File Notice of Claim; Plaintiff's State Law Claims

"The purpose of the notice-of-claim requirement is to afford the municipality an adequate opportunity to investigate the claim in a timely and efficient manner and, where appropriate, to settle claims without the expense and risks of litigation." *Hardy v. N.Y.C. Health & Hosps. Corp.*, 164 F.3d 789, 793–94 (2d Cir. 1999) (internal citation omitted); *see also Tuff v. Vill. of*

---

[8] Although this is also inadmissible hearsay evidence, the Court highlights it to underscore the questionable nature of Plaintiff's claim, especially considering the faulty evidence upon which she relies.

*Yorkville Police Dep't*, No. 6:16-cv-473, 2017 WL 401241, at *11 (N.D.N.Y. Jan. 30, 2017) (stating the notice-of-claim requirement is "designed '[t]o enable authorities to investigate, collect evidence and evaluate the merit of a claim.'" (quoting *Brown v. City of N.Y*, 95 N.Y.2d 389, 392-93 (2000)); *Javed v. Shuang Zhang*, 872 F. Supp. 2d 194, 198 (N.D.N.Y. 2012). "In light of these goals, '[n]otice of claim requirements are construed strictly by New York State Courts.'" *Chodkowski v. County of Nassau*, No. 16-cv-5770, 2017 WL 10637956, at *7 (E.D.N.Y. Nov. 30, 2017) (quoting *Hardy*, 164 F.3d at 793); *see also Varsity Transit, Inc. v. Bd. of Educ. of City of N.Y.*, 5 N.Y.3d 532, 536, 840 N.E.2d 569, 571 (2005) (reaffirming that "statutory requirements conditioning suit [against a governmental entity] must be strictly construed . . . even where the Department had actual knowledge of the claim or failed to demonstrate actual prejudice" and recognizing that "[w]e have repeatedly rejected, and now reject again, proposals to compromise the strict statutory notice of claim requirement, because to do so would lead to uncertainty and vexatious disputes."). Hence, "[a] plaintiff's failure to comply with the mandatory New York Statutory notice-of-claim requirements generally results in dismissal of h[er] claims." *Warner v. Vill. of Goshen Police Dep't*, 256 F. Supp.2d 171, 175 (S.D.N.Y. 2003) (citing *Hyde v. Arresting Officer Caputo*, No. 98-cv-6722, 2001 WL 521699, at *4 (E.D.N.Y. May 11, 2001)); *see also Henneberger v. County of Nassau*, 465 F. Supp.2d 176, 199 (E.D.N.Y. 2006)(finding that "because plaintiffs failed to serve a timely notice of claim on the County, all of their state law claims against the individual defendants and the County are dismissed without prejudice").

Even if the Court were to construe Plaintiff's Verified Complaint as a Notice of Claim, she has failed to comply with New York's General Municipal Law § 50-i's pleading requirements that she allege: the Notice of Claim was served; at least thirty (30) days passed

since service of the Notice of Claim; and Defendants failed to satisfy her claim. Instead, Plaintiff alleged:

> 3. Plaintiff filed a verified Complaint with the New York State Division of Human Rights [on] May 8, 2015.
> 4. On March 4, 2016, the EEOC mailed to Plaintiff a Right to Sue Letter.
> 5. Plaintiff competed all of her administrative prerequisites and filed her complaint with 90 days of receipt of the Right to Sue Letter.

(Complaint.) Moreover, the record is void of any evidence that Plaintiff served the County Attorney with the Verified Complaint, *see* N.Y. Gen. Mun. Law §§50-e, 50-i, and her reliance on her undated letter to then-County Executive Mangano as such proof is wholly unavailing. (*See* Ex. 11.) Hence, Plaintiff's failure to comply with the strictures of New York's Notice of Claim requirements warrants the dismissal of her state law claims.

Alternatively, because Plaintiff failed entirely to respond in opposition to the Defendants' arguments regarding her state law claims, she is deemed to have abandoned those claims. *See Taylor v. City of N.Y.*, 269 F. Supp.2d 68, 75 (E.D.N.Y. 2003)("Federal courts may deem a claim abandoned when a party moves for summary judgment on one ground and the party opposing summary judgment fails to address the argument in any way.")(citing *Douglas v. Victor Capital Group*, 21 F. Supp.2d 379, 393 (S.D.N.Y. 1998)(collecting cases)); *see also Patacca v. CSC Holdings, LLC*, No. 16-cv-0679, 2019 WL 1676001, at *13 (E.D.N.Y. Apr. 17, 2019)(discussing abandonment of claims; collecting cases); *Green*, 2019 WL 4392691, at *3 (collecting cases).

* * *

The Court has considered the Plaintiffs' remaining arguments and finds them to be without merit.

IV.     Conclusion

Accordingly, IT IS HEREBY ORDERED that, after drawing all inferences and resolving all ambiguities in favor of the Plaintiff but, finding that no rational jury could find in her favor, the Defendants' Summary Judgment Motion is GRANTED; all of Plaintiff's claims are dismissed as a matter of law.  The Clerk of Court is directed to enter judgment in favor of the Defendants and, thereafter, close this case.

* * *

The October 10, 2019 Status Conference is marked off the Court's calendar.

SO ORDERED this 25th day of September 2019 at Central Islip, New York.

/s/ *Sandra J. Feuerstein*

Sandra J. Feuerstein
United States District Judge